The MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK,
Plaintiff–Appellant,

v.

Hillel YAMPOL, Jay Shlofroch, Morris
Shlofroch, and Benefit Center Limited,
Defendants–Appellees.

Hillel YAMPOL, Counterplaintiff–Third
Party Plaintiff,

v.

The MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK,
Counterdefendant,

and

Sheldon Robinson and Associated
Financial Consultants, Inc.,
Third Party Defendants.

No. 86–3136.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1987.

Decided Feb. 5, 1988.

Rehearing and Rehearing En Banc
Denied April 13, 1988.

Donald E. Casey, Springer, Casey, Dienstag & Silverman, P.C., Chicago, Ill., for plaintiff-counter/defendant-appellant.

Gary Starkman, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant-counter/plaintiff-appellee.

Before BAUER, Chief Judge,
COFFEY, Circuit Judge, and
ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The Mutual Life Insurance Company of New York ("MONY") filed suit in 1983 against several defendants alleging that the defendants had breached their fiduciary duties to the National Health Care Trust ("Trust") in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* In filing suit, MONY was acting as the assignee of the Illinois Director of Insurance ("Director"), who is acting under a state court order to liquidate the Trust. *People of the State of Illinois ex rel. O'Connor v. National Health Care Trust, et al.,* No. 82 CH 14 (Order of Feb. 9, 1982). The question we must answer in this appeal is whether the district court was correct to dismiss the complaint on the ground that MONY had no standing under ERISA to bring the present action. MONY argues that the Director qualifies as a fiduciary of the Trust under 29 U.S.C. § 1002(21), and that as his assignee, MONY has standing to sue the defendants for breach of their fiduciary duties under 29 U.S.C. § 1132(a)(2). We agree that the Director qualifies as a fiduciary under the plain language of ERISA, 29 U.S.C. § 1002(21), and will therefore reverse and remand.

## I

■ The Trust is, according to MONY's first amended complaint, a self-insured employee benefit plan established as part of a "Plan of Hospital and Medical Coverage" pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a). The Trust provides benefits for employees of various Illinois nursing homes. MONY describes itself as an "excess insurer" of the trust's health plan. MONY alleges that defendants Hillel Yampol ("Yampol"), Jay Shlofroch, Morris Shlofroch, and Benefit Center, Ltd., managed the affairs of the Trust from March 1, 1980 and that, in so doing, each was obligated to manage the Trust in accord with the fiduciary duties established by 29 U.S.C. § 1104. MONY further alleges, in two separate counts, that the defendants violated their fiduciary duties to the detriment of the Trust.

At some point in 1982 the Illinois Director of Insurance initiated an action in the Cook County Circuit Court for the liquidation of the Trust, *People of the State of Illinois ex rel. O'Connor v. National Health Care Trust, et al.,* No. 82 CH 14, in which action the defendants Yampol and Jay Shlofroch (according to the complaint) voluntarily appeared and consented on behalf of the Trust to the appointment of the Director as Liquidator.

Pursuant to the order of liquidation entered by the Cook County court on February 9, 1982, and the pertinent provisions of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, ¶¶ 799 to 833.11 (Smith–Hurd 1965 and Supp.1987), the Director was "vested by operation of law with the title to all property, contracts and rights of action of the company...." Ill.Rev.Stat. ch. 73, ¶ 803. On November 15, 1982 the Director assigned to MONY "the right to pursue, at its own expense, all claims and causes of action of NHC [National Health Care] Trust to recover amounts due to NHC Trust and ... authorized [MONY] to do so in its own name, or as assignee of the Liquidator of NHC Trust." Agreement of November 15, 1982, at 4. In return, the Agreement recited that MONY had loaned the Director $325,000 to pay claims incurred by the Trust.[1] *Id.* at 2. The agreement was approved by the county court overseeing the liquidation proceedings.

Acting under the authority of this agreement, MONY filed an action alleging that the defendants had violated their fiduciary duties during their administration of the Trust. Defendant Yampol filed a motion to dismiss the complaint on the ground that MONY had no standing. The district court denied this motion and the request that it reconsider that decision. MONY later filed a first amended complaint clarifying that it was the Director's assignee but otherwise essentially reiterating the claims of the original complaint. Defendant Yampol renewed its motion to dismiss the complaint

---

1. The defendants have not challenged MONY's status as a valid assignee of any rights of action the Director possessed on the date of the Cook County court's order of liquidation.

and the district judge again denied the motion. At this point the action was reassigned to another district judge.

Having lost its motion to dismiss, Yampol filed its answer to the first amended complaint. Yampol also filed a counterclaim against MONY and a third party complaint against Sheldon Robinson and Associated Financial Consultants, Inc. ("AFC"). Third party defendants Robinson and AFC then filed their own motion to dismiss the complaint, based on the same ground earlier asserted by the defendants. The second district judge granted the motion, determining that ERISA provided no standing for MONY. MONY now appeals.

## II

MONY asserts that ERISA provides jurisdiction for its claim under two distinct rationales. MONY claims that ERISA's jurisdictional provision is not exclusive, *see* 29 U.S.C. § 1132(e)[2], and that the Trust itself has standing to bring an action under 29 U.S.C. § 1132(a)(2) for relief from breaches of fiduciary duty, *see* 29 U.S.C. § 1109, simply because it is an ERISA plan.[3] MONY also asserts that the Director as Liquidator of the Trust is an ERISA fiduciary, and that MONY, as the Director's assignee, may therefore bring suit as a fiduciary under 29 U.S.C. § 1132(a)(2). Because the Director qualifies as a fiduciary under the plain language of the statute, *see* 29 U.S.C. § 1002(21), we hold that MONY has properly invoked the jurisdiction of the federal courts. We therefore do not consider MONY's assertion that the plan itself would have standing to pursue the claim, even though ERISA plans are not named as one of the several entities provided standing under ERISA's jurisdictional and standing provisions. *See* 29 U.S.C. §§ 1132(a), 1132(e)(1).

Fiduciaries are expressly provided standing to bring actions for relief from breaches of fiduciary duty. 29 U.S.C. § 1132(a)(2); *see id.* § 1109 (making fiduciaries liable for breaches of their fiduciary duties); *id.* § 1104 (defining a fiduciary's duties). Section 1002(21) of Title 29 provides in pertinent part that for the purposes of ERISA a person is a fiduciary to the extent (i) that he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation,

**2.** 29 U.S.C. § 1132(e)(1) provides *in extenso*:
Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

The courts of appeals have split on the question of whether the grant of jurisdiction in section 1132(e) is exclusive and have thus reached different results when asked to determine if district courts have jurisdiction over ERISA suits on behalf of the plan itself. *Compare Tuvia Convalescent Center, Inc. v. Hospital Employees,* 717 F.2d 726 (2d Cir.1983) (no jurisdiction over plan) *and Northeast Department ILGWU Fund v. Teamsters Local 229 Welfare Fund,* 764 F.2d 147, 153 (3d Cir.1985) (holding that section 29 U.S.C. § 1132(e) is exclusive and that therefore neither "a pension fund or a trustee (fiduciary) can sue under § 1132(a)(1)(B) on behalf of participants or beneficiaries") *and Pressroom Unions Printers Fund v. Continental Assurance Co.,*

700 F.2d 889 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (no jurisdiction over plan) *with Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) (jurisdiction exists over plan). *See also Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund for Northern California,* 700 F.2d 1269, 1278 (9th Cir.1983), *cert. denied,* 464 U.S. 825, 104 S.Ct. 94, 78 L.Ed.2d 101 (1983) (limiting *Fentron* to confer standing only where "specific and personal" injuries are alleged); *Peoria Union Stockyards Co. v. Penn Mutual Life Insurance Co.,* 698 F.2d 320, 326 (7th Cir.1983) (suggesting in dicta without analysis that an ERISA plan has standing). This court has held that derivative suits under Fed.R.Civ.P. 23.1 may be brought by representatives of ERISA plans in appropriate circumstances. *Thornton v. Evans,* 692 F.2d 1064, 1079–80 (7th Cir.1982).

**3.** 29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title...." Section 1109 (29 U.S.C. § 1109) provides for the personal liability of a fiduciary for any breach of his fiduciary duties.

direct or indirect, with respect to any moneys or other property of such a plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

We agree with the first district judge who decided this question below that the Director's responsibilities with regard to the Trust fall well within the parameters of this language.

Under the Illinois statutory provisions detailing his duties and powers as Liquidator, the Director possesses significant authority and control over the management and disposition of any company he is authorized to liquidate. Ill.Rev.Stat. ch. 73, ¶ 805 (Smith–Hurd 1965 & Supp.1987).[4] Among other rights and responsibilities, the Director may, subject to the approval of the state court, sell or otherwise dispose of the real and personal property of the Trust. He may also sell or compromise all doubtful or uncollectible debts or claims of the Trust, again with the approval of the state court. The Director may also solicit contracts whereby solvent companies assume the liabilities owing to the Trust's policyholders and such other creditors "as may be possible." He may use the assets of the Trust to reinsure or cede as much business as necessary. *Id.*

The Illinois statutory provisions direct that the state courts shall by written order

---

4. The Illinois statutory provisions describe in detail the fundamental duties of the Director acting in the capacity of Liquidator:

Duties of Director as Liquidator—Sales—Notice to Creditors—Reinsurance. (1) Upon the entry of an order directing liquidation, the Director shall immediately proceed to liquidate the property, business and affairs of the company. He is hereby authorized to deal with the property and business of the company in his name as Director, or, if the court shall so order, in the name of the company.

(2) He may, subject to the approval of the court, sell or otherwise dispose of the real and personal property, or any part thereof, and sell or compromise all doubtful or uncollectible debts or claims owing to or by the company including claims based upon an assessment levied against a member or a subscriber of any company issuing assessable policies, except that whenever the amount of any such debt or claim owed by or owing to the company does not exceed $500, the Director may compromise or compound the same upon such terms as he may deem for the best interest of the company without obtaining approval of the court.

(3) He shall as soon as may be conveniently possible, give notice to all creditor [sic] who may have claims against the company, as revealed by the records of the company, to present the same.

(4) In order to preserve so far as possible the rights and interests of the policyholders of the company whose contracts were cancelled by the liquidation order and of such other creditors as may be possible, the Director may solicit a contract or contracts whereby a solvent company or companies will agree to assume in whole, or in part, or upon a modified basis, the liabilities owing to said former policyholders or creditors. The Director may, subject to Section 531.08(h) of this Code, cede or reinsure all or so much as may be necessary of the in-force business to another company using assets of the liquidated company to pay therefor in preference to satis-fying other obligations or creditors. The Director may assign any rights or interests of the company to receive reinsurance proceeds for losses to the Illinois Life and Health Insurance Guaranty Association or any similar organization in any other state. If, after a full hearing upon a petition filed by the Director, the Court shall find that the Director endeavored to obtain the best contract for the benefit of said parties in interest, and if the said Director shall report to the court that he is ready and willing to enter into a contract and submit a copy thereof to the court, the court shall examine the procedure and acts of the Director, and if the court shall find that the best possible contract in the interests of said parties has been obtained and that it is best for the interests of said parties that said contract be entered into, the court shall by written order approve the acts of the Director and authorize him to execute said contract.

(5) In recognition of the rights of policyholders whose "claims made" contracts were cancelled by the liquidation order, he may, in his discretion, permit such policyholders to purchase an extended discovery period which is subject to the limitations in this Article. The policyholder shall pay to the liquidator a premium which is appropriate for the rights purchased as determined by the liquidator and approved by the court. No extended discovery period purchased before or after the entry of the liquidation order shall extend the time to file claims as set by the court pursuant to Section 208 of this Code. [Footnote omitted.] Claims accruing by virtue of such extended discovery period shall be treated as any other claim under Article XXXIV of this Code, [footnote omitted], and shall be subject to the limitations, exclusions and conditions in the Illinois Insurance Guaranty Fund Act [footnote omitted] and in the laws governing similar organizations in other states.
Ill.Rev.Stat. ch. 73 ¶ 805 (Smith–Hurd 1965 & Supp.1987).

approve the Director's acts and authorize him to enter into such contracts if the court finds that the Director has endeavored to find, and has indeed found, the "best possible contract" in the interests of the policyholders of the Trust and such other creditors as may be possible. *Id.* There thus can be no doubt the Director exercises a significant degree of control, authority and responsibility in the management of the Trust and the disposition of its assets. *See, e.g., Chicago Board of Options Exchange v. Connecticut General Life Insurance Co.,* 713 F.2d 254, 258–60 (7th Cir.1983) (power to alter an annuity contract that was an asset of an ERISA plan enough to qualify as a fiduciary). Under the application of the plain language of ERISA the Director is therefore a fiduciary.

While the Director falls within the ERISA definition of fiduciary given a literal reading of its definition, we note that the result is underscored by this court's consistently broad reading of that definition. *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 735–38 (7th Cir. 1986); *Leigh v. Engle,* 727 F.2d 113, 133–34 (7th Cir.1984); *Chicago Board of Options Exchange,* 713 F.2d at 258–60; *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131 & n. 4 (7th Cir.1983); *Thornton v. Evans,* 692 F.2d 1064, 1077 (7th Cir.1982).

■ The Director does not, of course, have complete discretion over the management and disposition of the assets of the Trust, but the fact that a court oversees and must approve many of the Director's decisions does not bely the fact that the Director negotiates, solicits, drafts contracts and acts in general as the manager of the Trust. An individual is a fiduciary to the extent that he exercises *any* discretionary authority or control respecting management of a plan or the disposition of its assets. *Leigh,* 727 F.2d 113, 133–34; *Eaton v. D'Amato,* 581 F.Supp. 743, 745–46 (D.D.C.1980) (corporation a fiduciary despite tight supervision and control by the plan's trustees); *Brink v. DaLesio,* 496 F.Supp. 1350, 1374 (D.Md.1980), *aff'd in part, rev'd in part, on other grounds,* 667 F.2d 420 (4th Cir.1982) (individual a fiduciary despite requirement that trustees approve his work because the individual performed a significant portion of the work and the trustees relied heavily on his judgment).

In addition, we note that ERISA is a comprehensive remedial act Congress designed to provide federal forums and uniform substantive law to safeguard the interests of employees and their beneficiaries. *See generally* S.Rep. No. 127, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4838, 4844–65; H.R.Rep. No. 533, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639 ("House Report"); *see also Thornton v. Evans,* 692 F.2d 1064, 1079 (7th Cir.1982). To strip the Director of fiduciary status would leave the individual most keenly aware of any breaches of duty by past fiduciaries without the ability to sue to obtain the benefit of ERISA's remedial provisions. While remedies of various description may be available in the states, a fundamental purpose behind ERISA was Congress's purpose to assure plan participants and fiduciaries sufficient and uniform remedies that traditional trust law had, in the view of Congress, all too often failed to provide. *E.g.,* House Report, *reprinted in* U.S.Code Cong. & Admin.News at 4650; *see also Thornton,* 692 F.2d at 1079.

The defendants argue that *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), establishes that the Director may not be considered a fiduciary for the purposes of ERISA. In *Levy,* the Second Circuit held that the New York state liquidator was not an ERISA fiduciary in the circumstances of that case where there were no plan assets to manage or dispose, and where the liquidation of the insurance company involved would require the state liquidator to favor the ERISA creditors, an "isolated group of retirees," rather than to consider fairly the claims of all the creditors. *Id.* at 967–68. With regard to the first rationale, the Trust was

funded [5] and *Levy* is therefore inapposite. With regard to the second rationale, the liquidated company under the New York state liquidator's control was an insurance company that sponsored a variety of programs that established obligations on its part. *Levy*, 635 F.2d at 962. There is no insurance company with several plans involved in the appeal before us; instead, there is a single ERISA plan, the Trust. Thus the conflicts *Levy* envisioned among various beneficiaries and participants of different plans fall out of the picture.

Of course, the Trust itself may have other creditors besides the participants and beneficiaries, and the Director must consider their claims fairly—but this does not put him into a substantively different position from other fiduciaries of ERISA plans. The management of any ERISA plan necessarily involves the making of commitments (beyond the circle of participants and beneficiaries) in the course of investing the ERISA funds and accomplishing the day-to-day administration of the plan. While the fiduciary's loyalty must be to the participant and beneficiaries, he must also treat fairly the plan's obligations to the creditors created by its ongoing business. Further-

more, the defendants have not brought to our attention any specific conflict of interest to support their assertions that the Director will face unmanageable conflicts. *Cf. United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1266–69 (7th Cir.1985) (neither employer nor union could be considered an ERISA fiduciary with regard to their negotiations over a collective bargaining agreement because of the inconsistency between the duties imposed on a fiduciary and the demands placed on the negotiating parties in collective bargaining).[6]

The defendants cite our decision in *Schacht v. Brown*, 711 F.2d 1343, 1346 n. 3 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983), as precedent for their proposition that the Director cannot pursue an action that was unavailable to the liquidated company prior to the order of liquidation. In *Schacht*, however, we were reviewing in dicta Illinois case law construing the Director's ability to maintain actions under the authority of the Illinois Insurance Code. *See* Ill.Rev.Stat. ch. 73, § 803.[7] *See Schacht*, 711 F.2d at 1346–47. The Director's standing to sue as an

---

**5.** While the complaint alleges that funds were "wasted" and makes other references to funds, it does not specifically allege that the Trust was "funded" in the sense that term is used in ERISA. Nevertheless, the plaintiffs have represented in their briefs that the Trust was funded, and the defendants have not taken issue with that representation. Given the liberal standard upon which we review motions to dismiss, we accept that the Trust was funded for the purposes of this opinion. The issue will of course be open for consideration on remand.

**6.** It is true that the *ERISA* definition of the term "fiduciary" does not, in application, necessarily exclude from fiduciary status under the Statute all individuals who might, due to present or future circumstances, find themselves confronted with a dual role/potential dual loyalty predicament (e.g., a corporate officer of an employer who is also a plan trustee or as here, a liquidator of a plan who also falls under the 29 U.S.C. § 1002(21)(A) definition of "fiduciary"). Nevertheless, it is clear that under the *ERISA* scheme any person who falls within the scope of the § 1002(21)(A) definition is a fiduciary and therefore may bring a cause of action pursuant to 29 U.S.C. § 1132(a)(2) and further is required to act in a manner consistent with the fiduciary duties set forth in § 1104 of the Statute.

The § 1002(21)(A) definition of the term "fiduciary" is clear and unambiguous. For that reason, and in light of the "comprehensive and reticulated" nature of the civil enforcement mechanism Congress has created in 29 U.S.C. § 1132 and the related provisions of Subchapter I of the Statute, there is no need to supplement the § 1002(21)(A) definition by grafting onto it any additional qualifications one must satisfy before being deemed a "fiduciary" with respect to a plan for purposes of *ERISA*. See *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1419 (2nd Cir.1985), (citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1980), quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980).

**7.** Section 803 provides in pertinent part that

The Director and his successor and successors in office shall be vested by operation of law with the title to all property, contracts and rights of action of the company as of the date of the order directing rehabilitation or liquidation.

Ill.Rev.Stat. ch. 73, ¶ 803 (Smith–Hurd 1965 & Supp.1987).

ERISA fiduciary does not derive from Illinois statutory authority to bring the suit, but rather from the Director's status as an ERISA fiduciary under the facts of this case. It is ERISA itself that provides fiduciaries with standing to sue under 29 U.S.C. 1132(a)(2). Thus in this case federal law provides the Director standing whereas in *Schacht* no such federal provision of standing was claimed.

We hold that, under the particular circumstances of this case, the Director is a fiduciary of the Trust for the purposes of ERISA. MONY, as the Director's assignee, therefore has standing to pursue its amended complaint based on 29 U.S.C. 1132(a)(2).

### III

In accordance with the foregoing opinion, the judgment of the district court is

REVERSED AND REMANDED.